

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 2 3 2007 ★

P.M.
TIME A.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------- x

THE CITY OF NEW YORK,

                Plaintiff,

-against-

BOB MOATES' SPORT SHOP, INC.; COASTAL TILE
& ROOFING COMPANY, INC. d/b/a Costal Pawn Shop;
JOHN COSCIA d/b/a/ John's Gun & Tackle Room;
FRANKLIN ROD & GUN SHOP, INC.; GWINNETT
PAWN SHOP, INC.; HOT SHOTS, INC. d/b/a Hot Shots
Jewelry & Pawn; MILLER ROD & GUN, INC.; RJS
ENTERPRISES, INC. d/b/a Dick's Pawn Shop North;
JERRY DALE ROOKS d/b/a/ Rooks Sales & Service;
TCE OF VIRGINIA, INC. d/b/a Town & Country Pawn
Shop; TOCCOA PAWN & VARIETY, INCORPORATED;
TRADER WORLD, INC.

                Defendants.

----------------------------------------------------------------- x

06-CV-6504(JBW)

MEMORANDUM & ORDER
MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER
JURISDICTION

JACK B. WEINSTEIN, Senior District Judge:

      Plaintiff, the City of New York ("City"), commenced this action in December 2006, against twelve federal firearms licensees. Asserted is a claim for public nuisance that arises out of defendants' retail firearms sales. Injunctive relief is sought. Defendant Bob Moates' Sport Shop, Inc. ("Moates"), moves pursuant to Federal Rule of Civil Procedure 12 (b) (1), to dismiss the complaint for lack of subject matter jurisdiction.

      The motion is denied.

      "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). District courts have original jurisdiction "where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens



of different States." 28 U.S.C. § 1332(a)(1). Once diversity of citizenship has been established, in order to justify dismissal, it "must appear to a legal certainty that the claim is really for less than the jurisdictional amount . . . " *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *accord Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir.1999).

In actions seeking declaratory or injunctive relief, the amount in controversy is measured by the value of the object of the litigation. *Hunt v. Washington State Apple Adver. Com'n*, 432 U.S. 333, 347 (1977). The Court of Appeals for the Second Circuit has observed that "the amount in controversy is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." *Kheel v. Port of New York Auth.*, 457 F.2d 46, 49 (2d Cir.1972) (internal quotations omitted). "Where the plaintiff seeks injunctive relief, the value of his claim is generally . . . measured by the extent of the impairment to be prevented by the injunction. In calculating that impairment, the court may look not only at past losses but also at potential harm." *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87-88 (2d Cir.1991).

In its complaint the City alleges that there is "a near-daily stream of incidents in which City residents, City police officers and City visitors are shot dead or wounded by prohibited persons wielding illegally possessed handguns," *Compl.* ¶ 4, and that between 1995 and 2005 "70,000 handguns [were] . . . recovered by NYPD or other law enforcement agencies." *Compl.* ¶ 40. The City contends that between 1995 and 2004 "approximately 5,400 people died in New York City as a result of gun violence . . . ," *Compl.* ¶ 41, and "tens of thousands" of gun related rapes, robberies and assaults occurred. Many of these guns were illegally obtained outside the

city.

The impact of the daily incidents involving illegal firearms on the health and safety of the City and its residents is significant. Based on the number of gun related injuries and crimes alleged in the complaint, the value of the claim, measured by the injury to the City and its residents which would be averted if injunctive relief were granted, meets the jurisdictional amount. In addition, the City estimates that it expended $5,171,319 in medical costs for firearm fatalities and hospitalizations in 2001 alone. *See Pl.'s mem. in opp.*, at 8. A substantial amount of this cost is, according to the city, traceable to guns sold by defendants and used illegally in New York City.

For purposes of jurisdictional allegations the nuisance identified in the complaint imposes cost on the City in excess of $75,000. The defendant has not established that the injury sought to be averted or the suit's intended benefit is insufficient to meet the requite jurisdictional amount. Measured by the extent of the harm that may be prevented if injunctive relief is obtained, as well as the medical costs that may be imposed on the City by the nuisance alleged, the amount in controversy exceeds $75,000, exclusive of interest and costs.

The defendant's motion to dismiss is denied.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: March 22, 2006
Brooklyn, NY