FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 3 0 2008 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x

THE CITY OF NEW YORK,

                                      Plaintiff,

                    -against-

BOB MOATES' SPORT SHOP, INC.; COASTAL TILE & ROOFING COMPANY, INC. d/b/a Coastal Pawn Shop; JOHN COSCIA d/b/a John's Gun & Tackle Room; FRANKLIN ROD & GUN SHOP, INC.; GWINNETT PAWN SHOP, INC.; HOT SHOTS, INC. d/b/a Hot Shots Jewelry & Pawn; MILLER ROD & GUN, INC.; RJS ENTERPRISES, INC. d/b/a Dick's Pawn Shop North; JERRY DALE ROOKS d/b/a Rooks Sales & Service; TCE OF VIRGINIA, INC. d/b/a Town & Country Pawn Shop; TOCCOA PAWN & VARIETY, INCORPORATED; TRADER WORLD, INC.;

                                  Defendants.

---------------------------------------------------------------- x

06-CV-6504

**MEMORANDUM
& ORDER
APPROVING
SETTLEMENT**

**Appearances:**

**For Plaintiff City of New York:**

    Michael Cardozo, Corporation Counsel for the City of New York
        By:    Melanie C.T. Ash
                 Ari Biernoff
                 Richard J. Costa
                 Eric Proshansky

    Pillsbury Winthrop, Shaw, Pittman LLP
        By:    Bryan Robert Dunlap
                 Kenneth William Taber

**For Defendant Bob Moates' Sport Shop, Inc.:**

    Law Offices of Richard E. Gardiner
        By:    Richard E. Gardiner



1

**JACK B. WEINSTEIN, Senior United States District Judge:**

## I. Introduction

This memorandum and order deals with the proposed settlement of the last of a series of civil cases brought by the City of New York to limit violence from the illegal use of guns in the City. As indicated below, the settlement is reasonable. It is approved, effectively terminating this complex litigation in favor of the City of New York.

The City commenced this action in December, 2006 against twelve gun retailers located in Georgia, Ohio, Pennsylvania, South Carolina and Virginia. In a similar action filed in May 2006, the City sued fifteen additional retailers on similar grounds. See City of New York v. A-1 Jewelry & Pawn, Inc., No. 06-CV-2233 (E.D.N.Y.) ("A-1 Jewelry & Pawn"). Both actions allege an equitable civil cause of action for public nuisance under New York State law. They are based upon a theory that a relatively small number of out-of-state gun retailers have been illegally and negligently furnishing firearms to prohibited persons that are trafficked into New York City, creating a dangerous public nuisance.

The City alleges that it has evidence of the use of a substantial number of these guns in New York City for serious crimes. Each of the defendants has sold guns to straw purchasers standing in for the real buyers, a practice that transfers guns through the illegal interstate market to criminals in New York City. Other delicts leading to a public nuisance are alleged. Relief sought by the City is an injunction abating the public nuisance by the appointment of a special master mutually agreed upon by the parties. The special master would monitor the gun retailers to ensure that the retailer did not make illegal sales that contributed to the nuisance in New York City. Monetary penalties would be imposed should defendants violate the judgment.

Most of the twenty-seven defendants in these two separate actions have voluntarily entered into settlement agreements with the City. Some have been voluntarily dismissed. A few have defaulted. Eleven of the original twelve defendants in the instant action have settled.

Trial for Bob Moates' Sport Shop, Inc. ("Moates' "), the only pending case in these two actions, had been scheduled for September 2, 2008. A hearing on a motion for summary judgment, in limine motions and a pretrial conference had been scheduled for August 21, 2008. At the hearing, the parties reported that were engaged in settlement discussions and that trial should be adjourned. The terms of this settlement are somewhat similar to the ones involving other defendants in these two actions.

## II. Background

This is an equitable cause of action involving the safety of many people in the city and the freedom of the defendant-retailers to operate a lawful business in their home state. See Staples v. United States, 511 U.S. 600, 610-13 (1994) (discussing history of legal gun ownership); NAACP v. AcuSport, Inc., 271 F. Supp. 2d 435, 526-39 (E.D.N.Y. 2003) (detailing public nuisance resulting in New York City from the presence of illegal firearms). Consonant with "[t]he essence of equity jurisdiction…to do equity and to mould each decree to the necessities of the particular case," the court must satisfy itself as to the reasonableness of a settlement before it can be approved as a judgment of this court. Hecht v. Bowles, 321 U.S. 321, 329-30 (1944) ("The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims.").

The factual foundations of the City's claims have been sufficiently established. See City of New York v. Bob Moates' Sport Shop, Inc., No. 06-CV-6504, 2007 WL 906753, 2007 U.S.

Dist. LEXIS 21085 (E.D.N.Y. Mar. 23, 2007) (facts supporting exercise of subject matter jurisdiction); City of New York v. Bob Moates' Sport Shop, Inc., No. 06-CV-6504, 2008 WL 427964, 2008 U.S. Dist. LEXIS 11699 (E.D.N.Y. Feb. 15, 2008) (personal jurisdiction at motion to dismiss stage); A-1 Jewelry & Pawn, Inc., __ F.R.D. ___, 2008 WL 2154110 (E.D.N.Y. May 21, 2008) (personal jurisdiction on summary judgment); A-1 Jewelry & Pawn, 501 F. Supp. 2d 369 (E.D.N.Y. 2007) (personal jurisdiction at motion to dismiss stage); A-1 Jewelry & Pawn, 247 F.R.D. 296 (E.D.N.Y. 2007) (personal and subject matter jurisdiction at motion to dismiss stage, failure to state a cause of action, vagueness, remedy, extraterritoriality, comity, and due process). See also Johnson v. Bryco Arms, 304 F. Supp. 2d 383 (E.D.N.Y. 2004) (claims by victim of gun violence against gun manufacturer, wholesaler, distributor, and retailer); NAACP, 271 F. Supp. 2d 435 (claims by an organization against gun manufacturers, importers, and distributors); Hamilton v. Accu-Tek, 32 F. Supp. 2d 47 (E.D.N.Y. 1998) (claims by relatives of gun violence victims against gun manufacturers and distributors).

Two legal issues must be addressed before judgment can be entered. First is whether this court has personal jurisdiction over the defendant. Personal jurisdiction was established in deciding the motion to dismiss and summary judgment standards. Second, can the settlements and decrees resulting from default judgment be enforced in light of the Protection of Lawful Commerce in Arms Act, Pub. L. No. 109-92, 119 Stat. 2095 ("PLCAA") and the Supreme Court's recent decision in District of Columbia v. Heller, 128 S. Ct. 2783 (2008). The PLCAA mandates dismissal of lawsuits against gun retailers unless the retailer has violated a federal or state statute applicable to sale or marketing of firearms. If Heller calls into question the constitutionality of those statutes providing a predicate exception to the PLCAA which the City

alleges the defendants have violated, the actions must be dismissed and the judgment and settlements cannot be enforced.

## III. Personal Jurisdiction

Extensive evidence already produced in this and related cases establishes personal jurisdiction over the defendant. Personal jurisdiction in diversity cases such as this one is determined in accordance with the law of the forum state, subject to federal due process constraints. See, e.g., Savin v. Ranier, 898 F.2d 304, 306 (2d Cir. 1990). Jurisdiction in this case is asserted under section 302 of the New York Civil Procedure Law and Rules, the New York long arm statute. Section 302(a) provides:

> [A] court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y.C.P.L.R. 302(a)(3)(ii).

In order to assert jurisdiction under section 302(a)(3)(ii) the City must show that: (1) the defendant committed a tortious act outside New York; (2) defendant's tortious activity caused injury to person or property inside New York; (3) defendant should have reasonably expected the act to have consequences in the state; and (4) defendant derives substantial revenue from interstate commerce. See Moates, 2008 WL 427964, at *7-9.

The City has demonstrated for purposes of motions to dismiss and summary judgment that this defendant maintains a long, profitable and continuing commercial relationship affecting people in the State of New York. Personal jurisdiction is sought here not simply to vindicate an individual right or to resolve an individual commercial dispute, but to protect the safety of an entire community.

Unfounded has been defendant's contention that this court's exercise of personal jurisdiction would offend Constitutional Due Process. First, defendant's long-standing contacts with New York—supplying guns over the course of more than a decade to individuals who traffic these guns to New York for criminal purposes—are substantial. A-1 Jewelry & Pawn, 247 F.R.D. at 333-39 (discussing due process constraints on personal jurisdiction). Second, case law establishes that fewer contacts with New York are required when, as here, the cumulative weight of evidence of many independent retailers knowingly contributing to a large flow of illegal weapons into New York favors acquisition of personal jurisdiction in this State. See id. at 336-38 (discussing cumulative parallel conduct); id. at 338-39 (discussing special factors taken into consideration in determining personal jurisdiction in gun cases).

The City's allegations and proof demonstrate the kind of "purposeful availment" that was absent in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Alleged and thus far proven with abundant factual confirmation are facts that the defendant engaged in straw sales, knew, or should have known, that the apparent purchaser was acting on behalf of a prohibited purchaser, and knew, or should have known, that many of the guns it was selling illegally would be trafficked to New York and used in crimes committed in New York City. See Moates, 2008 WL 427964, at *2-3 (discussing facts supporting exercise of personal jurisdiction over Moates'). The City has provided an ample factual basis for concluding that this defendant earns substantial revenue from interstate commerce—revenues sufficient to subject it to suit in New York. Id.

New York has a strong interest in the safety of its residents and territory from handgun violence as well as in regulating the illegal flow of handguns into its territory. By enacting strong gun control laws to protect its citizens from gun-related crimes, New York City and State

have expressed a special public policy interest in the subject matter of this litigation. See City of New York v. Beretta U.S.A. Corp., 315 F. Supp. 2d 256 (E.D.N.Y. 2004) (City's suit against gun manufacturers, importers and distributors); A-1 Jewelry & Pawn, Inc., 501 F. Supp. 2d 369 (E.D.N.Y. 2007) (against gun retailers); People of the State of New York v. Sturm, Ruger & Co., 761 N.Y.S.2d 192 (N.Y. App. Div. 1st Dep't 2003) (State's suit against gun manufacturers, wholesalers, and retailers). The activities which the defendant is alleged to be involved in are illegal and against the public interest in all states and under federal law. See generally Bureau of Alcohol, Tobacco, Firearms and Explosives, Commerce in Firearms in the United States: 2000 (2000). Its illegal practices hinder the ability of New York and the federal government to regulate the sale and ownership of firearms in accordance with extant federal, state and local statutory and regulatory provisions and contribute to serious dangers from criminal conduct in the City.

## IV. Subject Matter Jurisdiction and Dismissal Pursuant to the PLCAA

### A. Subject Matter Jurisdiction Based on Diversity

Subject matter jurisdiction based on diversity of the parties has previously been found in this and related case. See Moates, 2007 WL 906753, at *1 ("Based on the number of gun related injuries and crimes alleged in the complaint, the value of the claim, measured by the injury to the City and its residents which would be averted if injunctive relief were granted, meets the jurisdictional amount.").

### B. Subject Matter Jurisdiction as Limited by the PLCAA

Defendants have relied upon the PLCAA to argue that the action must be dismissed for lack of subject matter jurisdiction. See Protection of Lawful Commerce in Arms Act, Pub. L. No. 109-92, 119 Stat. 2095 (2005) (codified at 15 U.S.C. §§ 7901-7903); A-1 Jewelry & Pawn,

247 F.R.D. at 349-53. The PLCAA requires that "[a] qualified civil liability action that is pending on [the date of enactment], shall be immediately dismissed." 15 U.S.C. § 7902(b). With exceptions not here relevant, a qualified civil liability action permitted under the PLCAA is a "civil action . . . brought by any person against a manufacturer or seller of a [firearm that has been shipped or transported in interstate or foreign commerce] . . . for damages, . . . injunctive or declaratory relief, abatement, . . . or other relief, resulting from the criminal or unlawful misuse of [the firearm]." 15 U.S.C. § 7903(5)(A). Another section of the PLCAA preserves from dismissal actions in which a firearms manufacturer or seller "knowingly violated a State or Federal statute applicable to the sale or marketing of [firearms], and the violation was a proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii).

The City has established that the exception in section 7903(5)(A)(iii) applies to the A-1 Jewelry & Pawn action and the PLCAA does not require dismissal. See A-1 Jewelry & Pawn, 247 F.R.D. at 349-53. The City alleged and proffered evidence supporting the conclusion that defendants' participation in straw purchases violates sections 922, 923 and 924 of title 18 of the United States Code, all of which specifically relate to the sale and marketing of firearms. See 18 U.S.C. §§ 922, 923, 924; A-1 Jewelry & Pawn, 247 F.R.D. at 349-53. Section 922 prohibits certain conduct relating to the sale, transfer, transport, manufacture, and importation of firearms and ammunition; section 923 governs the licensing of manufacturers, importers and dealers of firearms and ammunition; and section 924 imposes criminal penalties for certain conduct relating to the sale, transfer, transport, manufacture and importation of firearms and ammunition. Also alleged and proven were violations of New York Penal Law section 400.05, a state statute declaring that any unlawfully possessed, transported or disposed handgun is a nuisance. See N.Y. Penal Law § 400.05; A-1 Jewelry & Pawn, 247 F.R.D. at 352.

If these statutes, which provide the predicate exception under the PLCAA permitting the case to go forward, are unconstitutional under the Second Amendment and Heller, the action must be dismissed and the settlement and judgment cannot be enforced. Defendant cannot violate "a State or Federal statute applicable to the sale or marketing" of firearms if the statute is unconstitutional. See 15 U.S.C. § 7903(5)(A)(iii).

In Heller, the Supreme Court declared unconstitutional legislation applicable in the District of Columbia, a federal enclave. That legislation effectively outlawed all private ownership of handguns and placed restrictions on the operability of firearms lawfully retained in the home. See Heller, 128 S. Ct. 2783. This ruling has no applicability to the present case. First, New York City and State have not attempted to outlaw ownership of handguns but have sought to regulate them in a rational way by use of civil and criminal police authority. See, e.g., N.Y. Penal Law § 400.05. As all members of the Supreme Court recognized in Heller, localities retain power to regulate the ownership and control of weapons. The majority opinion of Justice Scalia recognized that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." Heller, 128 S. Ct. at 2816. It noted:

> From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

Id. at 2816-17 (citations and footnote omitted); see also id. at 2792 n.7 (collecting common law sources documenting restrictions on firearms); id. at 2794 n.8 (collecting state constitutional

9

provisions before and after the adoption of the federal Constitution pertaining to firearms). The minority's position favoring local control of handguns was clear. Justice Stevens's opinion provided an historical analysis on the state and federal limitations placed upon firearms. Id. at 2822-47 (Stevens, J., dissenting). Justice Breyer's opinion established that the District of Columbia's law is constitutional even if the majority's historical analysis of the Second Amendment were to be adopted. Id. at 2847-70 (Breyer, J., dissenting).

It cannot be concluded that Heller places in doubt all state and local control of guns required to protect citizens, particularly in urban communities. Even assuming that Heller will ultimately be declared applicable to states through incorporation, such an unlimited extension would arguably constitute a violation of the Ninth and Tenth Amendments. See U.S. Const. amend. IX ("The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."); U.S. Const. amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people.").

To transmutate Heller into an inhibition on long standing ancient nuisance powers of the state to control nuisances, the power of the federal government to regulate firearms that flow through the stream of interstate commerce, and the power of the federal judiciary in diversity cases to enforce that state substantive law is almost inconceivable.

V.      **Conclusion**

This case is not about an individual right to keep and bear arms. It is about gun-retailers' obligation to follow federal and state law applicable to the sale and marketing of firearms, the violation of which causes a public nuisance in a different geographical location through gun trafficking. New York State has long exercised substantive control over nuisance claims. The

federal government has enacted a comprehensive scheme to regulate the movement of firearms. Extensive state and federal control over licensing and marketing of firearms is based on historical precedent. Federal, state and local regulations and municipal use of civil litigation to control gun trafficking permit ownership with restriction and are appropriate under the Second Amendment. Adequate procedures are afforded to individuals by state and federal law respecting Fifth and Fourteenth Amendment due process and other concerns. New York State and City may rely upon their police powers, their scheme of gun control and civil litigation to protect their citizens. This court has subject matter and personal jurisdiction. The settlement is reasonable. It will add to the protection of citizens of New York without unduly inhibiting the defendant's ability to carry out its enterprise lawfully.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: September 29, 2008
Brooklyn, New York